IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 12-cv-01276-RBJ-BNB

JAMES TEMPLETON,
FRANK POWELL,
DAVID ALLEN,
DAVID COWDEN,
SHANNON SMITH,
ROBERT GALLOB, and
ROBERT C. ROWE,

Plaintiffs,

v.

PETER ANDERSON,
BRIAN BRADEN,
JEFF SMITH,
JAMES CHANEY,
TIMOTHY CREANY,
JAN SYLVIA,
STEVEN GALLEGOS,
LANCE JOHNSON,
CARL WOJCIECHOWSKI,
CHERI DRENNON,
STEPHEN ENGLE, and
THOMAS MARTIN,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

_____

This matter arises on the defendants' **Combined Motion to Dismiss and Partial Motion**

**for Summary Judgment** [Doc. #42, filed 10/01/2012] (the "Motion").  I respectfully

RECOMMEND that the Motion be GRANTED.[1]

_____

[1]The plaintiffs sought [Doc. #54] and received [Doc. #58] an extension of time until
November 23, 2012, to respond to the Motion.  The plaintiffs filed their response on November

# I.  STANDARD OF REVIEW

The plaintiffs are proceeding *pro se*, and I must liberally construe their pleadings.  Haines

v. Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as advocate for a *pro se* litigant, however,

who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.

Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction

under Fed.R.Civ.P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject
> matter jurisdiction take two forms. First, a facial attack on the
> complaint's allegations as to subject matter jurisdiction questions
> the sufficiency of the complaint.  In reviewing a facial attack on
> the complaint, a district court must accept the allegations in the
> complaint as true.
>
> Second, a party may go beyond allegations contained in the
> complaint and challenge the facts upon which subject matter
> jurisdiction depends.  When reviewing a factual attack on subject
> matter jurisdiction, a district court may not presume the
> truthfulness of the complaint's factual allegations.  A court has
> wide discretion to allow affidavits, other documents, and a limited
> evidentiary hearing to resolve disputed jurisdictional facts under
> Rule 12(b)(1). In such instances, a court's reference to evidence
> outside the pleadings does not convert the motion to a Rule 56
> motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to
> dismiss into a Rule 12(b)(6) motion or a Rule 56 summary

---

13, 2012. *Plaintiffs Response to Combined Motion to Dismiss and Partial Motion for Summary Judgment* [Doc. #60-2] (the "Response").  The Response was filed as an exhibit to their reply in support of their motion for injunctive relief [Doc. #60].  The plaintiffs also filed affidavits with their reply in support of their motion for injunctive relief.  The affidavits are referenced in both the reply in support of the motion for injunctive relief and the Response to the summary judgment motion.  However, the affidavits do not address exhaustion of administrative remedies, which is the only issue presented here under Rule 56.  Therefore, I do not refer to the affidavits in my analysis of the Motion.

> judgment motion when resolution of the jurisdictional question is
> intertwined with the merits of the case.  The jurisdictional question
> is intertwined with the merits of the case if subject matter
> jurisdiction is dependent on the same statute which provides the
> substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff.  City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief.  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  Summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  Only admissible evidence may be considered when ruling on a motion for summary judgment.  World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II.  BACKGROUND

The plaintiffs filed their Second Amended Prisoner Complaint on July 9, 2012 [Doc. #19] (the "Complaint").  At the time they filed the Complaint, the plaintiffs were incarcerated by the Colorado Department of Corrections ("DOC") at the Fremont Correctional Facility ("FCF").  They bring this action pursuant to 42 U.S.C. § 1983 for alleged constitutional violations arising from asbestos exposure.

The Complaint is tedious and prolix.  It contains the following allegations:

1.  In May 2011, an FCF official met with asbestos contractors.  *Complaint*, p. 9, ¶ 1.

2.  Plaintiff Templeton and inmate Winstead do maintenance work at FCF.  Id. at ¶ 2.

3.  On June 16, 2011, defendant Peter Anderson, DOC Life Safety Coordinator, told Templeton and Winstead and defendants Engle, Martin, and Smith that the glue in the floors (the

4

mastic) may contain asbestos.  Anderson and Engle asked Templeton and another inmate to stop their floor work immediately if the mastic color was black.  Id. at ¶ 3.

    4.   On June 24, 2011, Anderson received a small floor sample of the work area from defendant Martin.  Anderson told Martin that it was safe to begin removal of the tile in the Administration hallway, and that there should not be any asbestos in this part of the corridor because they had tested it.  Again, Anderson stated that the work must stop if black mastic is found.  Id. at ¶ 4.

    5.   Inmates, including many of the plaintiffs, began removal of the tile on June 27, 2011. The job was tedious.  A floor scraper with blade attachments, grinders, hammers, chisels, and ice scrapers were used to remove the floor tiles.  Dust and debris were in the air, and there was no ventilation.  The inmates were not provided with "safety gear or respiratory apparatus."  Id. at p. 10, ¶¶ 5-7.

    6.   On June 28, 2011, Templeton noticed black mastic on a tile.  Templeton notified defendant Cheney that he found black mastic, the work should be stopped, and he needed to contact Engle, Anderson, and Smith immediately.  Cheney ordered everyone to keep working. Id. at p. 11, ¶ 8.

    7.   Approximately an hour later, Engle, Smith, and Anderson arrived at the work site. Cheney ordereed the inmates to clean up all of the black mastic tiles.  After consulting the warden, Anderson stated to Engle and Smith that all six inmates might have to be quarantined; all clothes and tools would need to be bagged for decontamination and evidence; and the inmates would need to take decontamination showers before returning to the prison population.  Smith had the inmates' shoes confiscated and replaced.  Anderson decided that quarantine,

decontamination, medical evaluations, and clothing replacement were not necessary.  Id. at p. 12, ¶ 9.

8.   Templeton was exposed to window glazing material that contained asbestos "on a repetitive weekly basis" from February 2011 until this action was filed.  He was denied "medical diagnosis, prognosis and/or treatment."  He suffered "grave emotional fear of developing" an asbestos-related illness.

9.   On June 27 and 28, 2011, plaintiffs Cowden, Gallob, Powell, Allen, Rowe, and Smith were assigned to remove tile and mastic contaminated with asbestos.  All of the defendants knew the floors contained asbestos, but they failed to provide safety gear or medical and mental health services.  Id. at pp. 13-14, ¶¶ 11-16.

10.   On July 6, 2011, test results showed that the floor tiles contained 2% asbestos and the mastic contained 8% asbestos.  Id. at p. 14, ¶ 17.

11.   On July 18, 2011, Templeton spoke with Anderson and asked if the area was safe and free of asbestos.  Anderson replied that the area had been checked and that the air and the floor were 100% safe, but the wall tiles and areas past the crash-gate should not be disturbed. Templeton asked about dust masks and respiratory gear.  Anderson did not answer, "[k]nowing that he did not issue any 'gear' then or ever, nor does gear exist."  Id. at ¶ 19.

12.   The same day, inmate Winstead produced a large piece of tile containing black mastic.  Therefore, Anderson had lied about having the floors rechecked.  Id. at ¶ 20.

13.   Templeton asked defendant Martin if the Environmental Protection Agency and the Department of Transportation had been notified of the illegal dumping on June 27 and 28, 2011. Martin said "it's a mess."  Id. at pp. 14-15, ¶ 22.

14.  On July 19, 2011, Templeton and Winstead overheard Sergeant Roberta Camper tell Martin that there had been clouds of asbestos "flying everywhere" for two days and that Templeton and Winstead were "using grinders and kicking up dust everywhere and they had no protection gear or environmental machines." Id. at p. 15, ¶ 25.

15.  On July 19, 2011, Martin instructed Templeton to prepare the "abated" area for new tile.  This required removal of additional tiles and mastic which contained asbestos.  Templeton was instructed to remove the entrance area into the Roll Call room, which had not been abated. When he told Martin that the abatement team needed to remove the tiles and mastic, Martin told him that Anderson said it was safe.  Id. at ¶ 26.

16.  On July 21, 2011, Anderson asked Martin if his crew had removed wall tiles or tiles from under the doorways.  Martin affirmed that the crew had removed under the doorways into the Roll Call room.  Anderson stated that those tiles contain asbestos, but it should be alright.  Id. at ¶ 27.

17.  On August 12, 2011, the plaintiffs sent a formal request to be seen by "Medical & Mental Health" with regard to "[a]sbestos related exposure and stress, nightmares, fear of developing cancer and/or asbestos related illnesses, and anxiety/panic attacks." Id. at p. 16, ¶ 28.

18.  On September 20, 2011, Physician Assistant Gallegos issued a medical note indicating that FCF exposed Templeton to material containing asbestos.  Id. at ¶ 31.

19.  On October 10, 2011, Engle told Martin, Templeton, Winstead, and Cowden that "the old resin in the facility windows has [3%] asbestos in it."  The plaintiffs have replaced and are still replacing broken windows that contain asbestos in the glazing.  Id. at ¶ 32.

20.   On November 1, 2011, an "Asbestos Meeting" was held by Smith, Engle, and Martin.  All inmate maintenance workers attended.  Smith admitted to exposing the team to materials containing asbestos on June 27 and 28, 2011.  He apologized for not keeping the team informed and stated that it would never happen again.  Smith blamed defendant Brian Braden, Asbestos Coordinator.  Smith told the team to "go ahead and file your lawsuits but don't blame us."  The team was told that it was safe again.  Id. at ¶ 33.

21.   On November 20, 2011, the plaintiffs sent a "third request to medical & mental health behavioral sciences in regard to Asbestos related fears, anxiety and panic attacks as well as nightmares."  The Mental Health Department and the Medical Department have refused to answer.  Id. at pp. 16-17, ¶ 34.  The plaintiffs' fourth request was submitted on November 29, 2011.  It also went unanswered.  Id. at p. 17, ¶ 36.

22.   As of March 6, 2012, Templeton and Allen are still forced to do asbestos abatement.  Id. at ¶ 37.

23.   On March 6, 2012, an asbestos meeting took place at FCF.  "Admitting involuntary [asbestos] exposure & failure to treat medically and mentally."  Id. at ¶ 38.

The plaintiffs assert six claims.  The claims are not clearly stated, and they are redundant.  Claim One alleges that the defendants were deliberately indifferent to the plaintiffs' health and safety in violation of the Eighth Amendment when they exposed the plaintiffs to asbestos and failed to schedule medical testing.  Claim Two alleges that the defendants were deliberately indifferent to the plaintiffs' health and safety when they exposed the plaintiffs to asbestos and failed to provide medical and mental health treatment.  Claim Three alleges that the defendants violated the plaintiffs' due process rights by exposing them to asbestos.  Claim Four alleges that

the defendants were deliberately indifferent to the plaintiffs' medical needs.  Claim Five alleges

that the defendants were deliberately indifferent to the plaintiffs' mental health needs.  Claim Six

alleges that the defendants failed to render the proper medical and mental health treatment for

the plaintiffs' exposure to asbestos.[2]

The defendants are sued in their individual and official capacities.  Id. at pp. 17, ¶ 1.  The

plaintiffs request declaratory and injunctive relief.  They also seek compensatory, punitive, and

other damages.  Id. at pp. 27-29.

### III.  ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State, . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A.  Failure to Exhaust Administrative Remedies

The defendants assert that they are entitled to summary judgment on plaintiffs Rowe,

Smith, and Powell's claims because these plaintiffs have not exhausted their administrative

remedies.  Motion, p. 4.

---

[2]Any other claims the plaintiff may be attempting to assert are unintelligible and will not
be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he
broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging
sufficient facts on which a recognized legal claim could be based").  Further, to the extent the
plaintiffs' Response to the Motion attempts to add claims, Response, p. 2, I will not address
claims raised for the first time in a brief opposing a dispositive motion.

Because the plaintiffs' claims challenge prison conditions, they are governed by the

Prison Litigation Reform Act (the "PLRA").  42 U.S.C. § 1997e(a).  The PLRA provides:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

Id.

The Supreme Court has interpreted section 1997e(a) to require, prior to filing a lawsuit,

that the inmate exhaust all available administrative remedies whether the inmate is seeking

injunctive relief, monetary damages, or both.  Booth v. Churner, 532 U.S. 731 (2001).  The

Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other

exceptions into statutory exhaustion requirements where Congress has provided otherwise."  Id.

at 741 n.6.

The DOC provides inmates with a three-step grievance process.  *Motion*, Ex. A-1, ¶¶ 4-8.

Inmates are first required to attempt to resolve an issue by filing a Step 1 grievance within 30

days of the discovery of the issue.  An appropriate staff member will respond in writing to the

Step 1 grievance.  Id. at ¶ 4.  If the inmate is dissatisfied with the response, he may file a Step 2

grievance within 5 days of receipt of the response.  Id. at ¶ 6.  Step 2 grievances are investigated

and answered by the administrative head or a designee.  Id. at Attachment 1, §IVGb.  If the

inmate is dissatisfied with this response, he may file a Step 3 grievance within 5 days of receipt

of the response.  Id. at Ex. A-1, ¶ 7.  Step 3 grievances are investigated and answered by the

grievance officer.  Id. at Attachment 1, §IVGc.  The Step 3 grievance is the final step in the DOC

grievance process.  Id. at Ex. A-1, ¶ 8.

The Step 3 Grievance Officer, Anthony DeCesaro, attests that there is no record of a Step 3 grievance filed by plaintiffs Rowe and Smith which addresses involuntary exposure to asbestos or failure to receive proper medical treatment for asbestos exposure. Id. at ¶ 10. The plaintiffs do not provide any evidence to create a material fact dispute regarding whether Rowe and Smith filed a Step 3 grievance and therefore exhausted their administrative remedies.[3]

Mr. DeCesaro also attests that plaintiff Powell filed Step 1 and 2 grievances alleging that he was involuntarily exposed to asbestos while performing his work duties. The grievances were denied. Id. at ¶¶ 11-12. Powell also filed a Step 3 grievance regarding this matter, but it was denied as untimely. Id. at ¶ 13. The plaintiffs do not provide any contrary evidence indicating that Powell timely exhausted his administrative remedies.

A dismissal based on failure to exhaust should be without prejudice where the time for pursuing administrative remedies has not expired and the inmate can cure the defect by simply exhausting the available remedies. Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1213 (10th Cir. 2003), *overruled on other grounds*. See also Mitchell v. Figueroa, No. 12-6051, 2012 WL 2877461 (10th Cir. July 16, 2012) (affirming the district court's grant of summary judgment to the defendants and dismissal of unexhausted claims without prejudice).

The plaintiffs were required to submit their Step 3 grievances within 5 days of receipt of the Step 2 response. *Motion*, Ex. A-1, ¶7; Attachment 1, § IVHc. Powell did not timely submit his Step 3 grievance. It is unclear when or whether plaintiffs Rowe and Smith received responses to their Step 2 grievances. Regardless, "[i]n the event the time limit concerning any

---

[3]The plaintiffs state that Rowe exhausted his administrative remedies, *Response*, p 3., but they do not provide any evidence to support their statement.

step of the process expires without a response, the offender may proceed to the next step within five calendar days of the date the response was due." Id. at Attachment 1, § IVHd.  Rowe and Smith did not submit a Step 3 grievance.

Plaintiffs Rowe, Smith, and Powell are now procedurally barred from exhausting their administrative remedies on this issue.  See id. at Attachment 1, § IVD2 and B7.  The defendants are entitled to summary judgment, and plaintiffs Rowe, Smith, and Powell's claims should be dismissed with prejudice.

## B.  Official Capacity Claims

The defendants assert that the plaintiffs' claims for monetary damages against them in their official capacities are barred by Eleventh Amendment Immunity.  *Motion*, pp. 4-5.  The defendants assert a facial challenge to the court's subject matter jurisdiction.  Therefore, I accept the allegations in the Complaint as true for purposes of this argument.  Holt, 46 F.3d 1003.

The Eleventh Amendment bars suits in federal courts against unconsenting states by the state's own citizens and by citizens of another state.  Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990).  Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted).  Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983.  Quern v. Jordan, 440 U.S. 332, 345 (1979).

The Eleventh Amendment precludes federal jurisdiction over state officials acting in their official capacities as to retroactive monetary relief, but not as to prospective injunctive relief. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 102-03,105-06 (1984).

The defendants are employed by the DOC.  *Complaint*, pp. 2-3.  The DOC is an agency or subdivision of the State of Colorado.  Consequently, the Eleventh Amendment bars suit against these defendants in their official capacities for retroactive monetary relief.  The Motion should be granted to the extent it seeks dismissal of the claims against the defendants in their official capacities for retroactive monetary relief based on Eleventh Amendment immunity.

### C.   Compensatory Damages Under the Prison Litigation Reform Act

The defendants assert that the plaintiff's claims for compensatory damages are barred by the Prison Litigation Reform Act ("PLRA").  *Motion*, pp. 14-15.  The PLRA provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted.  Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir 2001) (applying section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).  Although section 1997e(e) bars recovery of compensatory damages for failure to allege physical injury, it does not bar recovery of punitive damages or declaratory or injunctive relief.  Id., at 881; Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 808 (10th Cir. 1999).

The plaintiffs allege that they have suffered from "[a]sbestos related exposure and stress, nightmares, fear of developing cancer and/or asbestos related illnesses, and anxiety/panic attacks," *Complaint*, p. 16, ¶ 28, and "[a]sbestos related fears, anxiety and panic attacks as well

as nightmares." Id. at pp. 16-17, ¶ 34.[4]  However, "a prisoner cannot satisfy Section 1997e(e) by

alleging only that he suffered from the physical manifestations of mental or emotional injuries."

Hughes v. Colorado Dep't of Corr., 594 F.Supp.2d 1226, 1238 (D.Colo. 2009) (collecting cases).

Therefore, the plaintiffs' claims are barred to the extent they seek compensatory damages.

### D.   Failure to State a Claim upon Which Relief Can Be Granted

The defendants argue that the plaintiffs fail to state an Eighth Amendment claim based on

asbestos exposure against defendants Creany, Sylvia, Gallegos, Drennon, Johnson,

Wojciechowski, and Braden. *Motion*, pp. 6-10.  The defendants also argue that the plaintiffs fail

to state an Eighth Amendment claim against any of the defendants based on failure to provide

medical and mental health care. Id. at pp. 12-13.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor

excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison

officials to provide humane conditions of confinement by ensuring that inmates receive adequate

food, clothing, shelter, and medical care and take "reasonable measures to guarantee the safety

of the inmates."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations

omitted).

A prisoner claiming an Eighth Amendment violation must establish both objectively and

subjectively that particular conditions of confinement constitute cruel and unusual punishment.

---

[4]The plaintiffs allege that the physical manifestations of asbestos related illnesses are
"headaches, migraines, constant phlegm in the throat, nausea and various degrees of becoming
easily winded." Id. at p. 20, ¶ 2.  However, the plaintiffs do not allege that any of them have
suffered these symptoms.

Wilson v. Seiter, 501 U.S. 294, 297-298 (1991).  To satisfy the objective component, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834.

To satisfy the subjective component, a plaintiff must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm.  Farmer, 511 U.S. at 834. The subjective component to a deliberate indifference claim is met if a prison official "knows of and disregards an excessive risk to inmate health or safety."  Farmer, 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.

An individual cannot be held liable under section 1983 unless he or she caused or participated in an alleged constitutional violation.  McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983).  Respondeat superior is not within the purview of section 1983 liability.  Id.  In order to hold a supervisor liable under section 1983, a plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011) (internal quotations and citation omitted).  Without a showing of personal involvement in the alleged constitutional violation, liability will not be imposed on a supervisory official.  Id. at 1163.

Although the Complaint contains tedious and prolix allegations against defendants Anderson, Smith, Chaney, Engle, and Martin regarding asbestos exposure, it does not contain any specific factual allegations to state a plausible claim that defendants Creany, Sylvia,

15

Gallegos, Drennon, Johnson, Wojciechowski, and Braden had any involvement in exposing the plaintiffs to asbestos.  Indeed, the only specific allegations concerning these defendants are that (1) Physician Assistant Gallegos issued a medical note indicating that FCF exposed Templeton to asbestos, *Complaint*, p. 16, ¶ 31, and (2) defendants Smith, Engle, and Martin held a meeting with the inmates where they told the inmates not to blame them, but instead blame Braden.  Id. at ¶ 33.

In addition, the Complaint does not contain specific allegations to show that any of the defendants were involved in the denial of medical or mental health care to the plaintiffs.  The allegations regarding denial of care are vague and conclusory.

Alvarado, 493 F.3d at 1215 n.2., provides that "courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her, and what specific legal right the plaintiff believes the defendant violated."  Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007).

The Motion should be granted insofar as it seeks dismissal of (1) the plaintiffs' claims against defendants Creany, Sylvia, Gallegos, Drennon, Johnson, Wojciechowski, and Braden for exposing the plaintiffs to asbestos, and (2) the plaintiffs' claims for denial of medical and mental health care against all defendants.

**E.   Due Process Claim**

16

Claim Three alleges that the defendants violated the plaintiffs' due process rights by exposing them to asbestos.  The defendants assert that the plaintiffs' due process claim "should be addressed with the Eighth Amendment claims."  *Motion*, p. 14.

Where the Eighth Amendment "serves as the primary source of substantive protection" for an inmate's conditions of confinement, as here, the Due Process Clause affords "no greater protection than does the Cruel and Unusual Punishment Clause" of the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 327 (1986).  "[A]ctions which are protected under specific constitutional provisions should be analyzed under those provisions and not under the more generalized provisions of substantive due process."  Berry v. City of Muskogee, Okl., 900 F.2d 1489, 1493 (10th Cir. 1990) (internal quotations omitted).

Claim Three is redundant of the plaintiffs' Eighth Amendment claims.  Therefore, Claim Three should be dismissed.

## F.   Qualified Immunity

The defendants states that they are entitled to qualified immunity.  *Motion*, pp. 16-17. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors. I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right. In addition, I must inquire whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).

I have already found that the plaintiffs failed to sufficiently allege a constitutional violation regarding their claims (1) against defendants Creany, Sylvia, Gallegos, Drennon, Johnson, Wojciechowski, and Braden for exposing the plaintiffs to asbestos, and (2) against all defendants for denial of medical and mental health care. Therefore, although the defendants are entitled to qualified immunity insofar as these claims are asserted against them in their individual capacities, I have recommended that these claims be dismissed entirely (as against defendants in both their official and individual capacities) because they fail to state a claim upon which relief can be granted.

### G.   Remaining Claims

If my Recommendation is adopted, the remaining claim is against defendants Anderson, Smith, Chaney, Engle, and Martin for exposing plaintiffs Templeton, Cowden, Gallob, and Allen[5] to asbestos in violation of the Eighth Amendment.

---

[5]Separately, I have ordered plaintiff David Allen to show cause why his claims should not be dismissed for failure to prosecute.

### IV.   CONCLUSION

I respectfully RECOMMEND that the Motion be GRANTED.[6]

Dated February 12, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

---

[6]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).