IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-01276-RBJ-BNB

JAMES TEMPLETON,
DAVID COWDEN,
ROBERT GALLOB,
DAVID ALLEN,

    Plaintiffs,

v.

PETER ANDERSON,
JEFF SMITH,
JAMES CHANEY,
TIMOTHY CREANY,
JAN SYLVIA,
STEVEN GALLEGOS,
CHERI DRENNON,
STEPHEN ENGLE,
THOMAS MARTIN,

    Defendants.

---

ORDER

---

This matter is before the Court on Defendants' Motion for Summary Judgment [ECF No. 161]. The Court asserts jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the motion is granted.

**BACKGROUND**

This case arises out of an incident in June 2011 in which the plaintiffs, inmates at the Colorado Department of Corrections ("CDOC"), were exposed to low concentrations of asbestos. The plaintiffs were assigned to work detail replacing floor tiles in the prison. Before

beginning the assignment, the defendants contend that a sample of the tile had been pulled and taken for testing, with the results indicating that there was no asbestos in the tile or in the mastic. Just in case the tests had returned false negatives, Officer Anderson told Officer Chaney that if the work crew encountered any color of mastic other than brown mastic the removal of the tiles should immediately stop. Tile removal began without incident on June 27, 2011. The next day, at approximately 1:35 p.m., plaintiff James Templeton discovered black mastic and immediately notified Officer Chaney. There is a genuine dispute as to whether Officer Chaney stopped the project immediately or if the plaintiffs were required to spend another 45–65 minutes removing tiles before stopping. This dispute will be discussed more fully below. Either way, the project was halted soon after this discovery, and the plaintiffs were sent back to their cell units.

The prison followed up by testing the area for asbestos. The results came back about a week later showing that the tile and mastic contained between 4% and 8% asbestos. On July 15, 2011 each of the named plaintiffs underwent chest x-rays due to possible asbestos exposure. Where abnormalities were seen, follow-up x-rays were ordered and administered. Overall, the defendants were unable to detect any immediate physical effects of the asbestos exposure.

The plaintiffs also claim that they were exposed to asbestos over a period of time when assigned to change out windows with asbestos-containing material ("ACM") in the window glaze. According to Mr. Templeton, defendants Engle and Martin were aware that the glaze contained ACM by October 2011. In spite of this knowledge, plaintiffs Templeton and Cowden were assigned to remove one 6" x 9" window containing ACM in the glaze on November 29, 2011. The defendants contend that they utilized a safety procedure when removing these windows in order to insulate the workers from asbestos exposure. The plaintiffs have not disputed this assertion in any of their declarations.

2

According to the plaintiffs, the defendants violated the Eighth Amendment by exposing them to asbestos in such a way that amounted to deliberate indifference and by failing to provide adequate medical and mental health care following the alleged exposure. The defendants argue that there are no genuine disputes of material fact such that they are entitled to summary judgment as a matter of law.

## ANALYSIS

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)). When deciding a motion for summary judgment, the Court considers "the factual record, together with all reasonable inferences derived therefrom, in the light most favorable to the non-moving party . . . ." *Id.* The Court does not weigh the evidence or make credibility determinations. *Id.* The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. In challenging such a showing, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Under the Eighth Amendment, a prison official may not act with deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Two conditions must be met in order to violate this proscription: first, the deprivation must be "sufficiently serious" under an objective standard; second, the prison official must have had

subjective knowledge of the risk of harm. *See Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir. 2008) (citing *Farmer*, 511 U.S. at 834, 837). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Prisoners exposed to toxic contaminants by deliberately indifferent correctional officers may seek relief under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 32–35 (1994) (finding an actionable Eighth Amendment claim arising from excessive tobacco smoke exposure); *LaBounty v. Coughlin*, 137 F.3d 68, 72 (2d Cir. 1998) (citing *Helling*, 509 U.S. 25, to support an Eighth Amendment claim arising from alleged exposure to friable asbestos).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that the defendant, acting under color of state law, deprived him of a right secured by the United States Constitution or its laws. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). "A defendant may not be held liable under § 1983 unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation." *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006) (alterations and citation omitted). In turn, the plaintiff must allege that the defendant personally participated in the alleged violation. *See e.g.*, *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).

### A. Exposure to Asbestos in June 2011 Tile Replacement Project.

"The health risk posed by friable asbestos has been acknowledged by various courts, which have held that inmates' unwilling exposure to an unreasonably high concentration of airborne asbestos particles constitutes a cognizable claim under the Eighth Amendment." *Pack v.*

4

*Artuz*, 348 F. Supp. 2d 63, 79 (S.D.N.Y. 2004) (collecting cases). Under the objective prong of the deliberate indifference test, "[f]or exposure to airborne asbestos fibers to create a substantial risk of serious harm . . . the intensity and duration of the exposure must both be significant." *Id.* at 79–80. Further, the subjective prong must also be met through a showing that the prison official knew of and disregarded an excessive risk to inmate health or safety; in this case, that he knew of the presence of the asbestos. The plaintiffs claim that their exposure to asbestos in June 2011 violated the Eighth Amendment. This claim is asserted against the Officer Defendants, Officers Anderson, Smith, Chaney, Engle, and Martin. For the following reasons, all of the Officer Defendants are entitled to judgment as a matter of law.

To begin, no allegations are put forth in the Second Amended Complaint that Officers Martin and Smith personally participated in the tile replacement project. Therefore, this claim is not actionable against these defendants under § 1983.

Next, the plaintiffs claim that Officer Anderson assured them that testing had been done to check whether the tiles contained asbestos before commencing the project. Declaration of James Templeton [ECF No. 151] at ¶ 4.[1] According to the plaintiffs, Officer Anderson stated that he believed the tests had come back negative for asbestos. *Id.* Officer Anderson's affidavit confirms this account. Affidavit of Peter Anderson [ECF No. 161-2] at ¶ 8. In turn, the plaintiffs cannot show that Officer Anderson had any subjective knowledge or belief that he was

---

[1] Because these plaintiffs are appearing *pro se*, the Court has liberally construed the record in this case. In particular, the Court references declarations and documents submitted by the plaintiffs in a variety of other motions even though none were attached to their response to this motion. Notably, Mr. Templeton has submitted three substantially similar declarations throughout this case. *Compare* [ECF No. 15] *with* [ECF No. 60-2 at 1–18] *and* [ECF No. 151]. Because the declarations are substantially similar, the Court will only cite to one for ease of reference.

exposing the plaintiffs to asbestos.[2]  As such, the subjective prong of the deliberate indifference test cannot be met.

Moving along, the only possible claim made against Officer Engle (and the Court reads this claim quite liberally) is that he and/or Officer Anderson were deliberately indifferent when they made a decision not to quarantine the plaintiffs or to order a shower and a change of clothes after the exposure.  According to Officer Anderson, he instructed the plaintiffs to remove their shoes and also "contacted the Shift Commander so that the offenders could get a shower." Affidavit of Peter Anderson [ECF No. 161-2] at ¶ 25.  Officer Chaney also attested that the inmates were instructed to return to their cell houses and shower.  Affidavit of James Chaney [ECF No. 161-7] at ¶¶ 7–9.  Notably, the plaintiffs have not alleged that they were prevented from showering or changing their clothes.  Therefore, at most they argue that Officer Engle and/or Officer Anderson were deliberately indifferent by not ordering that the plaintiffs be quarantined.  Yet there is no reason to believe that quarantine would have been an appropriate response.  Further, quarantining already-exposed individuals would not undo the initial exposure. Therefore, this failure could not constitute deliberate indifference towards the safety or health of the already-exposed inmates.  Insofar as this claim is alleged, it too must fail.

The remaining defendant in this cause of action is Officer Chaney.  As noted earlier, a genuine dispute of material fact surrounds the actions of Officer Chaney on June 28, 2011. Before the removal of tile began, Officer Anderson informed Officer Chaney that if the inmates encountered any color of mastic except for brown mastic he should stop the project immediately. Affidavit of Peter Anderson [ECF No. 161-2] at ¶ 11.  Nothing of significance occurred on June 27, 2011, the first day of the project, but the next day the plaintiffs discovered black mastic.

---

[2] On that note, any argument that the plaintiffs were not given proper protective gear is equally unavailing, as there was no reason to know that protective gear would be necessary before the discovery of the black mastic.

According to plaintiffs Templeton, Cowden, and Gallob, upon making this discovery they informed Officer Chaney that they needed to stop the project; however, Officer Chaney refused, directing them to finish lifting tile until they reached the first crash gate. Declaration of James Templeton [ECF No.151] at ¶ 10; Declaration of David Cowden [ECF No. 60-2 at 37–43] at 39–40, ¶ 5; Declaration of Robert Gallob [ECF No. 60-2 at 45–47] at 45. On the other hand, Officer Chaney has attested that once black mastic was found he contacted Officer Anderson and halted the project. Affidavit of James Chaney [ECF No. 161-7] at ¶¶ 7–9. Given the conflicting declarations, there is a genuine dispute of material fact over whether Officer Chaney stopped the project when black mastic was discovered.

Drawing all reasonable inferences in favor of the plaintiffs, for purposes of this motion the Court presumes that the subjective prong of the deliberate indifference test has been met as to Officer Chaney. However, Officer Chaney is still entitled to judgment as a matter of law because the objective prong of the test has not been met: neither the intensity nor the duration of the exposure was significant. Beginning with duration, Mr. Templeton has alleged that he discovered black mastic at approximately 1:35 p.m. on June 28, 2011. Declaration of James Templeton [ECF No. 151] at ¶ 10. At some point between 2:20 p.m. and 2:40 p.m. Officers Engle and Anderson arrived at the worksite and halted the project. *Id.* at ¶ 11. Therefore, only 45–65 minutes passed between the time the plaintiffs and Officer Chaney became aware of the black mastic and the time the exposure ended. Such a short duration of exposure is not objectively significant.[3] *Cf. Pack*, 348 F. Supp. 2d at 67 (alleging the defendants knowingly exposed the plaintiff to airborne asbestos over a period of seven years). Moving onto the

---

[3] The Court recognizes that it is possible that the plaintiffs were exposed to asbestos over both days of the project. However, liability cannot exist unless the subjective prong of the deliberate indifference test is also met. Since the earliest anyone knew of the potential exposure was 1:35 p.m. on June 28, 2011, the Court only looks to the duration of the exposure after this time.

7

intensity prong, the medical records indicate that the Department of Health recommended only taking baseline chest x-rays because of "this exposure being a very low exposure." Ambulatory Health Record of James Templeton [ECF No. 161-8 at 5]; *see also* Ambulatory Health Record of David Cowden [ECF No. 161-8 at 11] (reporting that Mr. Cowden's wife was "assured of minimal exposure to offenders"). The plaintiffs have responded by stating that no level of asbestos exposure is safe. However, even if this is true, it "still does not establish that any amount of asbestos exposure, no matter how small, creates an unreasonable risk of serious damage for purposes of an Eighth Amendment claim." *Pack*, 348 F. Supp. 2d at 87. The Court hereby finds that Officer Chaney is entitled to summary judgment because the objective prong of the deliberate indifference test cannot be met given the short duration and low level of asbestos exposure.

### B. Exposure to Asbestos Changing Windows.

As noted earlier, Mr. Templeton claims that he and Mr. Cowden were ordered to change out a 6" x 9" window in November 2011, approximately a month after Officers Engle and Martin knew the window glaze contained ACM. Declaration of James Templeton [ECF No. 151] at ¶¶ 34, 46. Notably, neither the Complaint nor Mr. Templeton's declarations indicate who assigned them this task. Because no personal participation by Officers Engle and Martin has been alleged, this claim is not actionable under § 1983. Further, the defendants have previously declared that elaborate safety precautions are taken in order to prevent asbestos exposure during the window replacement process. Affidavit of Thomas Martin [ECF 52-2] at ¶¶ 8–15.[4] The Court has no reason to doubt this assertion. As these safety precautions would minimize if not eliminate exposure to the asbestos, any claim of deliberate indifference to exposure must fail. Therefore,

---

[4] As the Court liberally takes into account previously filed declarations of the plaintiffs in support of their position, *see supra* note 1, in fairness it does the same on behalf of the defendants.

8

even presuming that Officers Engle and Martin were the ones who ordered that the window be replaced, both would be entitled to summary judgment as a matter of law.

The plaintiffs also allege that they have changed out hundreds of windows during their time in the prison, beginning in February 2011. These allegations are not sufficient to state a claim for relief without more, such as an allegation that at that time the defendants who gave the assignments knew that the window glaze contained ACM and that inadequate safety precautions were taken to prevent exposure. Any claims regarding these other assignments should have been dismissed in the Court's earlier March 25, 2013 Order [ECF No. 87] and are hereby dismissed.

### C. Medical Care.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "The prisoner's right is to medical care—not to the type or scope of medical care which he personally desires." *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968). "[A] prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) (cited by *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006)).

The plaintiffs contend that they were denied adequate medical care following their exposure to asbestos and that this failure constitutes a violation of the Eighth Amendment. These claims are asserted against the Medical Defendants, Dr. Creany and Mr. Gallegos. The plaintiffs argue that they should have been administered, at minimum, the following "modern

diagnostic tests": medical/mental, pulmonary, cardiovascular, respiratory, and digestive diagnostics. First Amended Complaint [ECF No. 19] at 24, ¶¶ 3–4. The defendants, instead, chose to administer chest x-rays after "work[ing] very closely with the Department of Health (asbestos department) for recommendations." Ambulatory Health Record of James Templeton [ECF No. 161-8 at 5]. Because the exposure to asbestos was "very low," and because it was not an abatement project, the Department of Health recommended administering baseline chest x-rays, *id.*, which the Health Services Administrator ordered for each of the plaintiffs, Affidavit of Dr. Timothy Creany [ECF No. 161-8] at ¶ 4. The results of these x-rays came back normal for plaintiffs Templeton and Allen; normal except for "mild hypertension" for Mr. Gallob;[5] and mildly abnormal for Mr. Cowden. *See id.* On September 7, 2011 the Medical Defendants administered a follow-up chest x-ray for Mr. Cowden and directly compared it to the earlier x-ray. *See id.* at ¶ 4(b). The defendants found that the appearance was stable with no substantial change. *See id.* The defendants further noted that there were "no discreet acute infiltrates identified," meaning there was no clear asbestos effect on Mr. Cowden. *See id.*

In addition, the Medical Defendants responded quickly and adequately to Mr. Templeton's one follow-up medical kite submitted on September 11, 2011, *see* [ECF No. 60-8 at 1], scheduling him for an appointment on September 20, 2011, *see* Ambulatory Health Record of James Templeton [ECF No. 161-8 at 5–6]. At this appointment, Mr. Templeton reported shortness of breath, coughing, watery eye, and severe migraines, all of which he believed to be attributed to the June 2011 asbestos exposure. *See* Ambulatory Health Record of James Templeton [ECF No. 161-8 at 6]. The medical professional who conducted the examination found that these symptoms were most likely attributable to allergies. *Id.*

---

[5] According to Dr. Creany, mild hypertension is consistent with chronic asthma or emphysema, and is not consistent with asbestos exposure. Affidavit of Dr. Timothy Creany [ECF No. 161-8] at ¶ 4(c).

The Court finds that there is no genuine dispute of material fact on the face of the record regarding the medical care the plaintiffs received in response to the asbestos exposure. On the basis of the record, the Court holds that the Medical Defendants were not deliberately indifference to the plaintiffs' medical needs. If anything, they provided the plaintiffs with adequate medical care. As such they are entitled to judgment as a matter of law.

### D. Mental Health Care.

"[P]rison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.'" *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The constitutional obligation to provide adequate medical care includes a responsibility to provide psychological treatment. *Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir. 1980). Once again, two prongs must be met: the prisoner's mental health needs must be objectively serious, and the prison official must subjectively know of and disregard an excessive risk to the inmate's health or safety. *See Rashad v. Doughty*, 4 F. App'x 558, 561 (10th Cir. 2001). "[A] medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos*, 639 F.2d at 575). A "severe mental illness" is "one that has caused significant disruption in an inmate's everyday life and which prevents his functioning in the general population without disturbing or endangering others or himself." *Tillery v. Owens*, 719 F. Supp. 1256, 1286 (W.D. Pa. 1989) *aff'd,* 907 F.2d 418 (3d Cir. 1990).

"Delaying medical treatment can violate the Eighth Amendment if the delay itself 'reflect[s] deliberate indifference which results in substantial harm.'" *Anderson v. Colorado,*

11

*Dep't of Corr.*, 848 F. Supp. 2d 1291, 1299 (D. Colo. 2012) (quoting *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)). Typically, courts have found that delays that violate the Eighth Amendment "frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems." *Hunt*, 199 F.3d at 1224 (citation omitted). "A prison medical professional who serves 'solely . . . as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill that gatekeeper role.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000)). However, "the subjective component presents a high evidentiary hurdle to the plaintiffs: a prison official must know about and disregard a substantial risk of serious harm." *Self*, 439 F.3d at 1232.

The plaintiffs claim that they were not provided adequate mental health care following their asbestos exposure, resulting in a violation of the Eighth Amendment's prohibition against deliberate indifference to serious medical needs. This claim is asserted against the Mental Health Defendants, Ms. Drennon and Ms. Sylvia. In particular, the Complaint alleges that a number of mental health requests went unanswered. Notably, none of the plaintiffs except for Mr. Templeton attest that they requested mental health care. The Court has no reason to believe that typical management of asbestos exposure necessitates mental health treatment. Therefore, the only plaintiff presenting a claim is Mr. Templeton, as he is the only one who requested but did not receive mental health treatment.

The Court has reviewed Mr. Templeton's repeated requests for mental health treatment which, on their face, suggest that he continued to submit these requests because they continued to go unanswered. *See* [ECF No. 60-8 at 2–3]. Of the four requests the Court could find in the

12

record, one of them names Ms. Drennon and another one names Ms. Sylvia as the mental health provider being requested. *See id.* The defendants contend that Ms. Drennon and Ms. Sylvia were unaware of and not responsible for these unanswered requests, and that therefore neither one personally participated in the alleged deprivation.

According to the submitted affidavits, Ms. Drennon is an administrative assistant for the Sex Offender Treatment and Management Program/Mental Health Department, Affidavit of Cheri Drennon [ECF No. 161-3] at ¶ 3, and Ms. Sylvia is a social worker responsible for providing mental health services to offenders, Affidavit of Janis Sylvia [ECF No. 161-4] at ¶¶ 2–3. The defendants claim that in spite of these roles neither individual had any involvement in or knowledge of the mental health requests submitted by Mr. Templeton. Affidavit of Cheri Drennon [ECF No. 161-3] at ¶ 8; Affidavit of Janis Sylvia [ECF No. 161-4] at ¶ 6. Given that at least one request was addressed to each individual, the Court finds that there is a genuine dispute of material fact regarding the awareness of and involvement in Mr. Templeton's mental health requests on the part of both defendants.

However, the Mental Health Defendants are still entitled to summary judgment as a matter of law. Even presuming that they knew of and ignored Mr. Templeton's requests, they did not disregard an objectively serious mental health need. Mr. Templeton's requests provide the following information regarding his need for treatment: (1) August 12, 2011 Request: "I have been exposed to asbestos. I am scared I might have been purposely poisoned"; (2) November 20, 2011 Request (Addressed to Ms. Drennon): "Nightmere's [*sic*] about cancer. Asbestos related fears, anxiety, panic attacks"; (3) January 3, 2012 Request: "General mental health check-up; P-code questions; Questions concerns about my phobia"; and (4) February 21, 2012 Request (Addressed to Ms. Sylvia): "I have sent at least ½ dozen request[s] to MH [Mental Health] to

13

speak to someone about asbestos related fears/concerns." The Court does not condone the prison's failure to provide a mental health evaluation, especially given how many times Mr. Templeton requested one in a span of several months. However, Mr. Templeton's fear and anxiety are not sufficiently serious mental health issues for a delay in care to rise to the level of an Eighth Amendment violation. The Mental Health Defendants are therefore entitled to judgment as a matter of law.

### E. Qualified Immunity.

Because the Court has found that all of the defendants are entitled to judgment as a matter of law, the question as to whether the defendants are entitled to qualified immunity is moot.

### ORDER

For the foregoing reasons, Defendants' Motion for Summary Judgment [ECF No. 161] is GRANTED. The civil action and all claims therein are dismissed with prejudice.

DATED this 23rd day of July, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge